LKLINE, J.
This is an appeal from a judgment finding the sale of an interest in a tract of land subject to rescission for lesion beyond moiety. For the following reasons, we affirm.
On July 15, 1994, plamtiffiappellee, William (Willie) Hudson Hornsby, sold her 5/18ths undivided interest in 364 acres of immovable property located in East Felici-ana Parish to defendant/appellant, Winton L. Slade. Nearly four years later, on May 4, 1998, Ms. Hornsby instituted this lawsuit against defendants/appellants, Winton L. Slade and Dorothy Prevost Slade, to set aside the sale on the basis of lesion, claiming that because of the gravel value in the property, the value of the property was more than twice the amount of the sale price.[2] The Slades filed a motion in limine to exclude appraisal information and opinion based on results of gravel testing and inspection reports made after the sale date. The motion in limine was referred to the merits. At trial, on November 7, 2001, the case was submitted to the trial court on deposition testimony and document exhibits.[3]
The parties entered into the following stipulations of fact:
1) The purchase price of the property was $28,000.00;
2) The value of the raw land was between $26,750.00 and $87,387.60;
3) The value of the gravel would be $97,417.50 to be added to the raw land value;
4) The property contained at least seventy acres of available gravel production;
5) Ms. Hornsby’s ownership was 5/18th interest in the property;
6) If the trial court allowed sand and gravel evidence (as to the value), then the sale was lesionary;
|s7) If lesion were found, Mr. Slade would return the property and receive the return of his purchase price, if the supplemental payment to be paid to Ms. Hornsby exceeded $50,000.00, exclusive of interest and costs.
In essence, the issue to be decided on the merits was whether the sand and gravel evidence was admissible.
The trial court issued written reasons for judgment on March 28, 2002, finding that the gravel constituted a solid mineral which was an inseparable component of the ground and, therefore, the data and information as to the gravel deposits could be used to determine the value of the land as of the date of the sale. Judgment was signed on June 6, 2002, ordering that the sale of July 15, 1994, be rescinded for lesion beyond moiety. The judgment further ordered that the Slades return the property to Ms. Hornsby and that Ms. Hornsby return to the Slades the original purchase price of the property, with interest from date of judicial demand.
*443 The Slades appealed asserting that the trial court erred in ruling that the sand and gravel evidence, obtained after the date of the sale, could be used to determine the value of the property. Appellants also assert that under the Mineral Code the valuation of solid minerals was precluded from being the subject of lesion beyond moiety. Ms. Hornsby answered the appeal requesting that the judgment be modified to eliminate appellants’ entitlement to legal interest.
DISCUSSION
Lesion. La. Civil Code Art. 2589 provides:
Art. 2589. Rescission for lesion beyond moiety
The sale of an immovable may be rescinded for lesion when the price is less than one half of the fair market value of the immovable. Lesion can be claimed only by the seller and only in sales of corporeal immovables. It cannot be alleged in a sale made by order of the court.
The seller may invoke lesion even if he has renounced the right to claim it.
It is to be emphasized that lesion can be claimed only by the seller and only in sales of corporeal immovables. La. C.C. Art. 2590 requires that to 1¿determine whether there is lesion, the immovable sold must be evaluated according to the state in which it was at the time of the sale. The required standard is “fair market value.”
Rescission on grounds of lesion differs from rescission on grounds of error, fraud or duress. The latter results in a declaration of nullity while in cases of the former the buyer has an option between returning the thing and recovering the price he paid, which is the effect of rescission, or paying a balance up to the fair price. See Saul Litvinioff, Vices of Consent, Error, Fraud, Duress and an Epilogue on Lesion, 50 La. Law. Rev., p. 110 (Sept.1989).
Lesion is actually an instrument of public policy that, with certain limitations, allows the judicial policing of certain contracts that, because of unfairness that can be objectively shown, are inconsistent with the welfare of the community and therefore contrary to the public order. Id.
Legislative framework — Minerals and Mineral Rights.
The Louisiana Mineral Code, LSA-R.S. 31:1, et seq., effective January 1, 1975, states that its provisions are supplementary to those of the Louisiana Civil Code and are applicable specifically to the subject matter of mineral law. LSA-R.S. 31:2. Section 2 also provides that in the event of conflict between the provisions of the Mineral Code, the Civil Code or other laws, the provisions of the Mineral Code will prevail. Additionally, if the Mineral Code does not expressly or impliedly provide for a particular situation, then the Civil Code or other laws are applicable. LSA-R.S. 31:2.
LSA-R.S. 31:4 determines the application of the provisions of the Mineral Code. It does not attempt a firm definition of the term “minerals.” Comment to LSA-R.S. 31:4. Section 4 provides:
The provisions of this Code are applicable to all forms of minerals, including oil and gas. They are also applicable to rights to explore for or mine or remove from land the soil itself, gravel, shells, subterranean water, or other substances occurring naturally in or as a part of the soil or geological formations on or underlying the land.
Thus, sand and gravel are substances to which the Mineral Code applies. Slay v. Smith, 368 So.2d 1144, 1146 (La.App. 3 Cir.1979); LSA-R.S. 31:4.
*444 | ROwnership of land includes all minerals occurring naturally in a solid state. However, solid minerals are insusceptible of ownership apart from the land until reduced to possession. LSA-R.S. 81:5. Minerals are reduced to possession when they are under physical control that permits delivery to another. LSA-R.S. 31:7. The comment to section 7 provides, in part:
Despite the fact that Article 5 recognizes that the owner of land also owns solid minerals, such minerals are insusceptible of ownership apart from the land, and the landowner may therefore only convey or lease the right to explore for them and reduce them to possession and simultaneously to ownership. Accordingly, the nature of the substance involved has no impact on the significance of reduction to possession and consequent vesting of title.
A.N. Yiannopoulos, Property § 118, at pp. 276-277 in 2 Louisiana Civil Law Treatise (4th ed.2001), provides a concise analysis, to wit:
§ 118. Ownership of Things Incorporated in, or Attached to, a Tract of Land — Minerals
Deposits of solid minerals are inseparable component parts of the ground, whereas fugacious minerals are in theory res nullius. However, the right to possession belongs to the owner of the ground.
The owner of the ground may segregate the mineral rights from the ownership of the land and either retain them himself or convey them to another person. Accordingly, rights in minerals may be regarded as separable component parts of the ownership of land. Mineral rights segregated from the ownership of land ordinarily take the form of the mineral servitude, a mineral lease, or a mineral royalty. (Reference footnotes omitted).
Louisiana Civil Code article 462 states:
Art. 462. Tracts of land
Tracts of land, with their component parts, are immovables. Louisiana Civil Code article 470, distinguishes from article 462 “rights and actions” that apply to immovables.
Art. 470. Incorporeal Immovables
Rights and actions that apply to immovable things are incorporeal immov-ables. Immovables of this kind are such as personal servitudes established on immovables, predial servitudes, mineral rights, and petitory or possessory actions.
The nature and creation of' mineral rights are provided in La. R.S. 81:15 et seq., to wit:
| fiPart 5. CREATION OF MINERAL RIGHTS BY THE LANDOWNER
§ 15. Right of landowner to convey, reserve, or lease right to explore and develop
A landowner may convey, reserve, or lease his right to explore and develop his land for production of minerals and to reduce them to possession.
§ 16. Basic mineral rights; status as real rights
The basic mineral rights that may be created by a landowner are the mineral servitude, the mineral royalty, and the mineral lease. This enumeration does not exclude the creation of other mineral rights by a landowner. Mineral rights are real rights and are subject either to the prescription of nonuse for ten years or to special rules of law governing the term of their existence.
*445 § 17. Rescission for lesion beyond moiety unavailable
A sale of mineral right is not subject to rescission for lesion beyond moiety.
§ 18. Nature of mineral rights
A mineral right is an incorporeal immovable. It is alienable and heritable. The situs of a mineral right is the parish or parishes in which the land burdened is located. All sales, contracts, and judgments affecting mineral rights are subject to the laws of registry.

Plaintiff’s contentions:

Plaintiff contends that sand and gravel are solid minerals and by nature corporeal, and that lesion lies in and only in cases of corporeal immovables as distinguished from mineral rights that are classified as incorporeal immovables under Civil Code article 470. Plaintiff urges that the value of the land includes the unmined quantity of sand and gravel deposits determined by precision testing. Plaintiff argues that the trial court was correct in finding under the law that ownership of land includes all minerals occurring naturally in a solid state and that including sand and gravel in the valuation of a tract of land does not constitute an “incorporeal immovable mineral right” so as to preclude lesion, and that the presence of these solid minerals that form the land should be considered in the fair market value of the land. Defendant’s Contentions
Defendant contends that it has been the doctrine in Louisiana that one did not own mineral interests until they were reduced to possession, and that one |7simply owned a right to produce them, and that un-produced minerals beneath the surface have little or no intrinsic value and are speculative in nature. Defendant argues that the expert valuation is based on a right to produce and develop gravel, which is a “mineral right” under the Mineral Code. By classifying the right to produce minerals as a mineral right, those rights should be considered incorporeal immov-ables for all purposes.
Defendant reasons, to wit:
There is no valid reason for treating the valuation of solid minerals owned by the landowner any differently from the valuation of the same minerals when owned by a separate owner as a “mineral right.”
It is clear under article 17 of the Mineral Code that the sale of a mineral is not subject to rescission for lesion beyond moiety.
Defendant argues that “Left in place, the sand and gravel add no ‘extra value’ to the land.”
CONCLUSION
The trial court was asked to determine under the statutory scheme of the Civfl Code and the prevailing Mineral Code whether the value of sand and gravel or solid mineral deposits in the land sold could be considered in determining fair market value of the land and, thus, subject the sale to cause of action for lesion beyond moiety.
Solid minerals, until reduced to possession, form an integral part of the land. It cannot be said that the presence of solid materials, being a component part of the land and capable of being reduced to possession, is an inconsequential factor in determining fair market value. With other factors being equal, lands with mineral deposits are worth more than lands without them.
Deposits of solid minerals are inseparable parts of the land. However, the owner of the land may segregate the mineral rights from the ownership of the land, and these mineral rights are deemed separable *446 component parts of ownership in the usual form of mineral servitudes, leases, and royalties. These segregated rights are classified as incorporeal immovables. These are the mineral rights that are not subject to a lesionary inquiry because of their speculative character.
IsOur statutory schemes have distinguished the classification of land with mineral deposits and the classification of the alienation of component parts called mineral rights. The former are corporeal im-movables subject to lesionary inquiry and the latter are incorporeal immovables not subject to a lesionary inquiry.
Lands with known mineral deposits may be valued as an entity and that trial judge was correct in permitting that testimony.[4]
Having determined the sand and gravel evidence is relevant in this action for lesion, we must acknowledge the stipulation that, if so, the subject sale was lesionary. We so find on the basis of the stipulation.[5]

INTEREST

The plaintiff argues in answer to the appeal that the trial court erred in ordering plaintiff to return the purchase price of $28,000.00 with interest from the date of judicial demand. Plaintiff acknowledges that judicial interest is provided for by statute in cases of lesion beyond moiety, La. C.C. art. 2592, but contends that stipulations by counsel, in the event of determination of lesion, served to fix the obligations of the parties. The obligation for plaintiff to return the $28,000.00 purchase price did not articulate statutory interest.
We are mindful of plaintiffs argument that the stipulations served to establish the parameters of the proceedings, but we find no error of law made by the trial court in awarding statutory interest.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellee.
AFFIRMED.
McCLENDON, J., dissents with reasons.

. At the time of the sale in this matter, LSA-C.C. art. 2595 provided a prescriptive period of four years for actions for the rescission of sales based on lesion beyond moiety. Acts 1993, No. 841, § 1, eff. Jan. 1, 1995, changed Article 2595 to provide a preemptive period of one year in actions for lesion.

.Subsequent to the trial of this matter, appellant, Winton L. Slade, died. A motion to substitute party was filed in this Court by appellee and referred to the merits. By order of this Court David Lee Slade was substituted as proper party defendant/appellant.

. The principles of valuation of the fair market value of mineral lands enunciated in Jones v. First National Bank of Ruston, 215 La. 862, 41 So.2d 811 (1949), has not been altered by the adoption of the mineral code.

. It is not then necessary for this Court to evaluate the expert’s method or opinions in finding the land value; however, in response to defendant's contention that evaluation almost four years after the sale is suspect because the statutory requirement for lesion is the value of the land at the time of the sale, C.C. art. 2590, it is axiomatic that sand and gravel minerals tend to remain in place absent a flowing stream, which could cause migration and replenishment. For that reason defendants are not aggrieved relative to the date of the testing.
There are other factors peculiar to the evaluation of the fair market value of the land: (1) the sale is of an undivided interest and (2) the fact that the reduction of the solid minerals to ownership consumes the land surface.